UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
ANTHONY WOODS,

      Petitioner,

  -against-

PHILIP D. HEATH, Superintendent,
Sing Sing Correctional Facility,

      Respondent.

------------------------------------------------------------------X

**MEMORANDUM & ORDER**

**12-CV-02175 (NGG)**

NICHOLAS G. GARAUFIS, United States District Judge.

  Anthony Woods brings this pro se Petition for Writ of Habeas Corpus, pursuant to 28

U.S.C. § 2254, attacking his 2007 state convictions for one count of first-degree burglary, three

counts of third-degree assault, and two counts of second-degree reckless endangerment. Woods

asserts three claims: (1) his judgment of conviction for first-degree burglary was against the

weight of the evidence and in violation of his right to due process; (2) the evidence for his three

counts of third-degree assault was legally insufficient and in violation of his right to due process;

and (3) he received ineffective assistance of counsel in violation of his right to a fair trial and due

process. For the reasons set forth below, Woods's Petition is DENIED.

## I. BACKGROUND

### A. Facts

  Anthony Woods and Chandra Sutton were in an intimate relationship as boyfriend and

girlfriend. (Resp. App. Br. (Dkt. 10-4) at 1.) There is, however, unresolved disagreement

between Woods and Sutton as to whether Woods lived in Sutton's apartment at the time of the

incidents at issue. (Trial Tr. (Dkt. 10-2) at 366-69.) Sutton claimed that while Woods often

spent the night at her apartment, he did not live with her and did not have a set of keys. (Id. at

1

253, 366.) Conversely, Woods asserts that he was a co-habitant of Sutton's home. (Def. Mot. to Vacate J. (Dkt. 10-4) at 15.)

In any event, in the early morning hours of April 6, 2006, Woods punched Sutton in the face, hit her repeatedly about the body, and choked her. (Resp. App. Br. at 2.) As a result, Sutton suffered a black eye, a swollen cheek, a knot on her forehead, and injured ribs. (Trial Tr. at 166.)

Two days later, on April 8, 2006, Woods appeared at Sutton's home and waited for her in the backyard, allegedly with a gun. (Id.) When Sutton opened her back door, Woods allegedly pointed the gun at her and dragged her into the house. (Pet. App. Br. (Dkt. 10-4) at 9.) While inside, Woods called Sutton derogatory names and threatened to kill her. (Resp. App. Br. at 2, 7.) At some point during this altercation, Sutton threw herself to the floor and began crawling away from Woods towards her bedroom. (Id. at 8.) As she crawled, Sutton claimed that she heard a shot and felt air blow quickly past her foot. (Id.) Sutton later realized that a bullet had passed through her dog's toy basketball and penetrated her living room floor. (Id.)

Two other incidents occurred between April 8, 2006, and May 3, 2006. (Id. at 9.) During the first incident, which occurred sometime between April 8, 2006, and May 2, 2006, Woods beat Sutton on the leg with a broomstick. (Id. at 2.) As a result, Sutton sustained bruises to her left leg and suffered pain. (Trial Tr. at 208-10, 409-10.) The second incident occurred during the early morning hours of May 3, 2006, when Woods punched Sutton in the stomach following an extended argument. (Resp. App. Br. at 9.)

Finally, on May 5, 2006, Woods again returned to Sutton's home, where he again allegedly pointed a gun at her and threatened her. (Id. at 2.) Woods flung Sutton towards a couch in Sutton's living room, at which point Wood's allegedly fired his gun. (Id. at 11.) Sutton

later discovered the bullet lodged in a textbook that had been sitting on her computer desk, near where she had been standing. (Id. at 12.)

## B. Trial Court Proceedings

Woods was charged in New York Supreme Court, Kings County, with one count of Burglary in the First Degree (N.Y. Penal Law § 140.30(4)), one count of Burglary in the Second Degree (N.Y. Penal Law § 140.30(1)), two counts of Criminal Possession of a Weapon in the Second Degree (N.Y. Penal Law § 265.03(2)), two counts of Criminal Possession of a Weapon in the Third Degree (N.Y. Penal Law § 265.02(4)) (repealed 2006)), two counts of Criminal Possession of a Weapon in the Fourth Degree (N.Y. Penal Law § 265.01[1]), three counts of Assault in the Third Degree (N.Y. Penal Law § 120.00(1)), two counts of Reckless Endangerment in the First Degree (N.Y. Penal Law § 120.25), two counts of Reckless Endangerment in the Second Degree (N.Y. Penal Law § 120.20), one count of Criminal Contempt in the First Degree (N.Y. Penal Law § 215.51(B)(II)), and one count of Criminal Contempt in the Second Degree (N.Y. Penal Law § 215.50(3)). (Aff. of Allison Ageyeva in Opp'n to Pet. for Writ of Habeas Corpus ("Ageyeva Aff.") (Dkt. 10) ¶ 5.)

Danielle Eaddy was appointed to represent Woods. (Trial Tr. at 2.) On July 5, 2007, Woods was convicted, after a jury trial, of one count of Burglary in the First Degree, three counts of Assault in the Third Degree, and two counts of Reckless Endangerment in the Second Degree. (Pl. Mem. to Set Aside Verdict ("Pl. Mem.") (Dkt. 10-4) ¶ 2.) Woods was acquitted of all other charges. (Id.) On April 22, 2008, the court sentenced Woods, as a second violent felony offender, to a term of imprisonment of twenty years on the burglary conviction, to run concurrently with terms of imprisonment of one year each on the three assault convictions and

3

the two reckless endangerment convictions. (Id.) Woods was also sentenced to a term of five years of post-release supervision. (Ageyeva Aff. ¶ 7.)

## C.  Motion to Set Aside the Verdict

On August 22, 2007, Woods moved to set aside the verdict pursuant to N.Y. Crim. Proc. Law § 330.30 on the ground that the verdict acquitting him of all counts of criminal possession of a weapon and first-degree reckless endangerment while convicting him of first-degree burglary was inconsistent and repugnant. (Id.) On October 17, 2007, the state trial court denied Woods's motion, finding that his claim was unpreserved because he did not object to the verdict until after the jury was released, and that his claim was without merit because first-degree burglary does not require proof that Woods actually possessed a firearm but only that he displayed what appeared to be a firearm. (See People v. Woods, Indictment Number 36/542006, October 17, 2007, Decision and Order.)

## D.  Direct Appeal

On June 23, 2010, Woods appealed his judgment of conviction to the New York Supreme Court Appellate Division, Second Department ("Appellate Division"). (Ageyeva Aff. ¶ 11.) Woods argued that: (1) in light of the jury's verdict acquitting him of all weapons possession charges, his convictions of first-degree burglary and second-degree reckless endangerment were against the weight of the evidence; (2) two of his convictions of third-degree assault under the eighth and ninth counts[1] of the indictment violated due process because the People failed to

---

[1]     According to both the jury charge and verdict in the trial transcript: (1) the first count of the indictment charged Woods with Assault in the Third Degree, on or about April 8, 2006; (2) the eighth count of the indictment charged Woods with Assault in the Third Degree, on or about and between April 8, 2006, and May 2, 2006; and (3) the ninth count of the indictment charged Woods with Assault in the Third Degree, on or about May 3, 2006. (Tr. Tr. at 911-12, 926-28, 986-88.) However, the point heading in Woods's brief filed with the Appellate Division on direct appeal refers to the April 8, 2006, to May 2, 2006, Assault in the Third Degree charge as the *ninth* count of the indictment and the May 3, 2006, Assault in the Third Degree charge as the *tenth* count of the indictment. (See Resp. App. Br. at 38.) Furthermore, the decision by the Appellate Division, Second Department referred to the "convictions of assault in the third degree under counts 1, 9, and 10 of the indictment." People v. Woods, 82 A.D.3d

prove beyond a reasonable doubt that the complainant suffered "physical injury"; and (3) he was deprived of his due process right to a fair trial by irrelevant and improper testimony about Sutton's character, as well as excessive references to God and religion, that served to engender sympathy for Sutton and bolster her credibility. (Def. App. Br. at 31, 38, 46.)

On March 29, 2011, the Appellate Division unanimously affirmed Woods's conviction. People v. Woods, 82 A.D.3d 1277 (2d Dep't 2011). The court concluded that Woods's claim "that the evidence was legally insufficient to support his convictions of third-degree assault [was] . . . unpreserved for appellate review and, in any event, without merit." Id. at 1278. The court further concluded that the guilty verdicts on the burglary and reckless endangerment counts were not against the weight of the evidence, and stated that it declined to "assume the basis for any implied inconsistencies in mixed jury verdicts." Id. at 1277-78. The court found Woods's remaining claims to be "without merit." Id. at 1278.

Woods sought leave to appeal from the affirmance of his conviction to the New York State Court of Appeals. People v. Woods, 16 N.Y.3d 901 (2011). On May 25, 2011, the Court of Appeals denied Woods's request for leave to appeal from the affirmance of his convictions. Id.

### E.    Motion to Vacate Judgment

By pro se motion dated September 8, 2011, Woods moved in New York Supreme Court, Kings County, to vacate his judgment of conviction pursuant to New York Criminal Procedure Law § 440.10(1)(h). (Def. Mot. to Vacate J. at 1.) Woods claimed that the evidence before the grand jury was insufficient to support his indictment for first-degree burglary and that his

---

1277, 1278 (2d Dep't 2011). In resolving this discrepancy, the court will rely on the trial transcript of the jury charge and verdict and herein refer to the April 8, 2006, to May 2, 2006, Assault in the Third Degree charge as the *eighth* count of the indictment and the May 3, 2006, Assault in the Third Degree as the *ninth* count of the indictment.

burglary conviction after trial was against the weight of the evidence. (Id. at 1-2.) Woods also asserted that he received ineffective assistance of counsel because trial counsel failed to: (1) introduce evidence that would have allegedly proven that he lived with Sutton; (2) make a motion for a trial order of dismissal at the end of the People's case on the grounds that the evidence was legally insufficient to sustain a charge of first-degree burglary; and (3) object to or request that the jury's verdict be dismissed on the grounds of repugnancy at the end of the trial. (Aff. in Supp. of Mot. to Vacate J. (Dkt. 10-4) at 6-19.)

On January 17, 2012, the court denied Woods's motion, concluding that most of Woods's claims were procedurally barred and, in any event, without merit as he had received meaningful assistance of counsel. People v. Woods, 2012 N.Y. Slip. Op. 30528(U), 2012 WL 781066 (N.Y. Sup. Ct. 2012). On March 6, 2012, Woods sought leave to appeal from the denial of his N.Y. Crim. Proc. § 440.10 motion to the Appellate Division. (Def. Leave App. from Denial of Mot. (Dkt. 10-4) at 1.) On April 13, 2012, the Appellate Division denied Woods's request for leave to appeal from his denial of his N.Y. Crim. Proc. § 440.10 motion. (N.Y. App. Div. Decision & Order on Appeal (Dkt. 10-4) at 1.)

### F.     Petition for Writ of Habeas Corpus

On April 30, 2012, Woods submitted the instant Petition for Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254. (Pet. for Writ of Habeas Corpus ("Pet.") (Dkt. 1.) at 1.) Woods asserts three claims: (1) that his judgment of conviction for Burglary in the First Degree was against the weight of the evidence and against the penal law statutory elements of the crime; (2) that the evidence for his three counts of Assault in the Third Degree was against the weight of the evidence; and (3) that he received ineffective assistance of counsel. (Pet. at 3-4.)

6

Respondent submitted a memorandum of law in opposition to the Petition (Resp. Opp'n (Dkt. 10)) and Woods replied (Pet. Reply (Dkt. 11)).

## II.    HABEAS CORPUS STANDARDS

Under 28 U.S.C. § 2254(a), a district court is empowered to "entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A person in custody pursuant to a judgment of a state court must generally meet three requirements to obtain habeas relief: (1) exhaustion; (2) lack of a procedural bar; and (3) satisfaction of the deferential standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996) (codified as amended at 28 U.S.C. § 2241, et seq). See Cone v. Bell, 556 U.S. 449 (2009).

### A.    Exhaustion

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1). "The exhaustion requirement is not satisfied unless the federal claim has been fairly presented to the state courts," meaning that the petitioner "informed the state court of both the factual and the legal premises of the claim he asserts." Daye v. Att'y Gen. of State of N.Y., 696 F.2d 186, 191 (2d Cir. 1982) (en banc) (internal quotation marks omitted).

"A petitioner is not required to cite 'book and verse on the federal constitution' in order for a claim to be 'fairly presented.'" Allison v. Khahaifa, No. 10-CV-3453 (KAM), 2011 WL 3298876, at *6 (E.D.N.Y. Aug. 1, 2011) (quoting Picard v. Connor, 404 U.S. 270, 275, 278 (1971)). "Instead, exhaustion may be satisfied where the legal basis of a claim made in state

7

court is the 'substantial equivalent' of the habeas claim." Id. (quoting Picard, 404 U.S. at 278).

"This means, in essence, that in state court the nature or presentation of the claim must have been

likely to alert the court to the claim's federal nature." Daye, 696 F.2d at 192. Thus, even if a

petitioner does not cite any federal constitutional provisions, he may fairly present his federal

claim to the state court through:

> (a) reliance on pertinent federal cases employing constitutional analysis,
> (b) reliance on state cases employing constitutional analysis in like factual
> situations, (c) assertion of the claim in terms so particular as to call in mind a
> specific right protected by the Constitution, and (d) allegation of a pattern of facts
> that is well within the mainstream of constitutional litigation.

Id. at 194.

Notably, *every* claim that a petitioner makes in his § 2254 application must first have

been raised in state court in order for the petition to be considered exhausted. This "total

exhaustion" rule requires that "a district court [ ] dismiss habeas petitions containing both

unexhausted and exhausted claims." Rose v. Lundy, 455 U.S. 509, 513, 522 (1982). But there is

an important exception to the total exhaustion rule—created by a 1996 amendment to AEDPA—

whereby a district court may deny an entire habeas petition on the merits notwithstanding a

petitioner's failure to exhaust some or all of his claims. See 28 U.S.C. § 2254(b)(2). That is,

when presented with a "mixed petition[]," a court may deny—but not grant—it on the merits.

Caswell v. Racetti, No. 11-CV-0153 (MAT), 2012 WL 1029457, at *4 (W.D.N.Y. Mar. 26,

2012) (citing Turner v. Artuz, 262 F.3d 118, 122 (2d Cir. 2001)).

**B.    Procedural Bar**

"It is well established that federal courts will not review questions of federal law

presented in a habeas petition application when the state court's decision rests upon a state-law

ground that is independent of the federal question and adequate to support the judgment." Cone,

556 U.S. at 465 (internal quotation marks omitted). "[W]hen a petitioner fails to raise his federal claims in compliance with relevant state procedural rules, the state court's refusal to adjudicate the claim ordinarily qualifies as an independent and adequate state ground for denying federal review."[2] Id.

"[T]he adequacy of state procedural bars to the assertion of federal questions is not within the State's prerogative finally to decide; rather, adequacy is itself a federal question." Id. (internal quotation marks and alteration omitted). Thus, a court "ha[s] an independent duty to scrutinize the application of state rules that bar [their] review of federal claims." Id. at 468.

The concepts of procedural bar and exhaustion often interact in an important way. If a § 2254 petitioner has failed to present a claim to a state court but *can no longer do so*—for example, if the time to file a state-court appeal has passed—then that claim is considered procedurally barred rather than unexhausted. See O'Sullivan v. Boerckel, 526 U.S. 838, 848 (1999) (holding that petitioner's "failure to present three of his federal habeas claims to the Illinois Supreme Court [ ] resulted in a procedural default of those claims"); Philbert v. Brown, No. 11-CV-1805 (NGG), 2012 WL 4849011, at *6 (E.D.N.Y. Oct. 11, 2012) (noting that "[w]hen a petitioner has not properly presented his claim to a state court for consideration on the merits, but it is clear that the state court would hold the claim procedurally barred, . . . the exhaustion requirement is satisfied" but the petitioner is barred "from litigating the merits of th[at] claim[] in federal habeas proceedings") (quoting Lloyd v. Walker, 771 F. Supp. 570, 574 (E.D.N.Y. 1991)). A court's conclusion that a claim is procedurally defaulted rather than exhausted relieves a petitioner of the harsh effects of the "total exhaustion" rule discussed above—that is, if a claim has not been presented to the state court but can *no longer* be brought

---

[2]    As an exception, a court may consider a procedurally barred claim on the merits if the prisoner demonstrates:  (1) "cause" for failing to comply with the state procedural rule; and (2) "prejudice" from the procedural bar. Wainwright v. Sykes, 433 U.S. 72, 92 (1977).

in state court, the court may consider the petitioner's *remaining* claims on the merits so long as *those* claims have been exhausted. See Turner, 262 F.3d at 122-23.

## C. AEDPA Deference

Where a state court does reach the merits of a claim asserted in a § 2254 habeas petition, the state's decision is reviewed under the deferential standard set forth in AEDPA, which provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Id. § 2254(d); see also Ryan v. Miller, 303 F.3d 231, 245 (2d Cir. 2002).

"Clearly established federal law refers to the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision." Howard v. Walker, 406 F.3d 114, 122 (2d Cir. 2005). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). A state court decision is an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. The question is "not whether the state court was incorrect or erroneous in rejecting petitioner's claim, but whether it was objectively unreasonable in doing so." Ryan, 303 F.3d at 245 (internal

quotation marks, alterations, and emphases omitted). The petition may be granted only if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." Harrington v. Richter, 131 S. Ct. 770, 786 (2011).

Under AEDPA, "a determination of a factual issue made by a State court [is] presumed to be correct," and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

## III. DISCUSSION

As an initial matter, the court notes that Woods is proceeding pro se, and thus his submissions should be held to standards "less stringent than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007). A pro se complaint and other documents are "to be liberally construed," Ahlers v. Rabinowitz, 684 F.3d 53, 60 (2d Cir. 2012), and interpreted "to raise the strongest arguments that they suggest," Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996). However, pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law." Boddie v. N.Y. State Div. of Parole, 285 F. Supp. 2d 421, 426 (S.D.N.Y. 2003) (quoting Traguth v. Zuch, 710 F.2d 90, 95 (2d Cir. 1983)).

### A. Weight of the Evidence

Woods argues that the trial court deprived him of his right to due process by permitting a judgment of conviction for Burglary in the First Degree that was against the weight of the evidence and against the penal law statutory elements of that offense. (Pet. at 3.) Respondent counters that a claim challenging the weight of the evidence supporting a first-degree burglary conviction cannot properly be before this court as such a claim asserts only an error of New York

11

State law, for which habeas review is unavailable. (Resp. Opp'n at 1.) For the following reasons, the court agrees with Respondent.

"[F]ederal habeas corpus relief does not lie for errors of state law." Swarthout v. Cooke, 131 S. Ct. 859, 861 (2011), reh'g denied, 131 S. Ct. 1845 (2011) (quoting Estelle v. McGuire, 502 U.S. 62, 67 (1991)). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Wilson v. Corcoran, 131 S. Ct. 13, 16 (2010) (quoting Estelle, 502 U.S. at 67-68). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Brown v. Conway, 483 F. App'x 593, 594 (2d Cir. 2012) (quoting Estelle, 502 U.S. at 67-68).

"A 'weight of the evidence' argument is . . . grounded in New York Criminal Procedure Law § 470.15(5)," Correa v. Duncan, 172 F. Supp. 2d 378, 381 (E.D.N.Y. 2001), and "does not present a federal question," Mejias v. Allard, No. 03-CV-5195 (NGG), 2006 WL 119033, at *17 (E.D.N.Y. Jan. 13, 2006). Here, Woods's argument that the verdict was against the weight of the evidence "states a claim under state law" and is therefore "not cognizable on habeas corpus [review]." Solis v. Artus, No. 09-CV-386 (NGG), 2012 WL 1252722, at *2 (E.D.N.Y. Apr. 12, 2012) (quoting McKinnon v. Superintendent, Great Meadow Correctional Facility, 422 F. App'x. 69, 75 (2d Cir. 2011) (citing Correa, 172 F. Supp. at 381)). Accordingly, this court is precluded from considering Woods's weight of the evidence claim. Id. at 2.

## B.    Legal Sufficiency of the Evidence

Woods claims that the evidence of his guilt was legally insufficient to support convictions for the three counts of Assault in the Third Degree. (Pet. at 4.) Specifically, Woods argues that he was denied due process because he was charged with several assaults that were: (1) based on insufficient physical contact; and (2) alleged to have occurred over a period of three

months, with no specific date of occurrence. (Id.) The Appellate Division rejected these claims on the merits. See People v. Woods, 82 A.D.3d 1277 (2d Dep't 2011). For the reasons that follow, the court concludes that the Appellate Division's conclusion was not contrary to, or an unreasonable application of, clearly established federal law. See 28 U.S.C. § 2254(d).

1.    *Partial Exhaustion*

As discussed above in Section II.A, "an application for a writ of habeas corpus . . . shall not be granted unless . . . the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1). To satisfy the exhaustion requirement, the federal claim must be "fairly presented" to the state court. See Dave v. Att'y Gen. of N.Y., 696 F.2d 186, 191 (2d Cir. 1982) (en banc). A federal claim is fairly presented to the state court where a habeas petitioner has informed the state court of the factual and legal premises of the claim he asserts in federal court. See 28 U.S.C. § 2254(b); Picard, 404 U.S. at 275-77; Daye, 696 F.2d at 191. Every claim that a petitioner makes in his § 2254 application must first have been raised in state court in order for the petition to be considered exhausted. See Rhines v. Weber, 544 U.S. 269, 273 (2005). Under this "total exhaustion" rule, where a petitioner presents "both unexhausted and exhausted claims," the "district court must dismiss [the] habeas petition[]." Rose, 455 U.S. at 513, 518-19.

Woods did not "fairly present" his due process claim to the state court. See Daye, 696 F.2d at 191. On direct appeal, Woods claimed only that his conviction for third-degree assault under the eighth and ninth counts of the indictment were based on legally insufficient evidence in violation of his due process rights; Woods failed to challenge his convictions for third-degree assault under count *one* of the indictment. (See Resp. App. Br. at 38-46.) Thus, Woods claimed that only two of his three third-degree assault convictions were based upon legally insufficient evidence. (Id.) Because Woods failed to fairly present his constitutional claim in state court as

13

to count one, his present claim as to the legal insufficiency of all three assault convictions is unexhausted. See Rose, 455 U.S. at 518-19. For the following reasons, however, although Woods has not exhausted his legal insufficiency claim, it will be deemed exhausted for the purposes of federal habeas review because it is procedurally defaulted.

### 2. *Procedural Default*

#### i. Count One of the Indictment

As discussed above in Section II.B, "when a petitioner fails to raise his federal claims in compliance with relevant state procedural rules, the state court's refusal to adjudicate the claim ordinarily qualifies as an independent and adequate state ground for denying federal review." Cone, 556 U.S. at 465. In such an instance, the claim is considered procedurally barred. See O'Sullivan v. Boerckel, 526 U.S. 838, 848 (1999). Because a procedurally barred claim is without a remedy in state court, it is deemed exhausted for the purposes of federal habeas review. See Perez v. Greiner, 296 F.3d 123, 124 n.2 (2d Cir. 2002); see also Daley v. Lee, No. 10-CV-6065 (NGG), 2012 WL 2577472 (E.D.N.Y. July 3, 2012). However, while a court's conclusion that a claim is procedurally defaulted rather than exhausted permits the petitioner to avoid the harsh effects of the "total exhaustion" rule, the court may consider only the remaining claims on the merits—but not the procedurally defaulted claim—so long as those claims have been exhausted. See Turner, 262 F.3d at 122-23; see also Daley, 2012 WL 2577472.

Whether a claim is procedurally barred is determined by reference to the relevant state law. See Coleman v. Thompson, 501 U.S. 722, 729-32 (1991). New York Criminal Procedure Law permits "one direct appeal to New York's Appellate Division and one request for leave to appeal to the New York Court of Appeals." Stultz v. Artus, No. 04-CV-3170 (RRM), 2013 WL 937830 (E.D.N.Y. Mar. 8, 2013) (citing N.Y. Crim. Proc. Law § 450.10(1)); N.Y. Court R.

§ 500.10(a)). "New York does not otherwise permit collateral attacks on a conviction when the defendant unjustifiably failed to raise the issue on direct appeal." Aparicio v. Artuz, 269 F.3d 78, 91 (2d Cir. 2001) (citing N.Y. Crim. Proc. Law § 440.10(2)(c)). Thus, New York State courts "must deny a motion to vacate a judgment when . . . [a] defendant[] unjustifiabl[y] fail[ed] to raise such ground or issue upon an appeal actually perfected by him." N.Y. Crim. Proc. Law § 440.10.

The doctrinal bar against hearing procedurally defaulted claims is not without exceptions. See Martinez v. Ryan, 132 S. Ct. 1309, 1316 (2012). "For a procedurally defaulted claim to [be heard on the merits], the petitioner must show cause for the default and prejudice, or demonstrate that failure to consider the claim will result in a miscarriage of justice." Aparicio, 269 F.3d at 90 (citing Coleman, 501 U.S. at 748-50); see also Trevino v. Thaler, 133 S. Ct. 1911, 1917 (2013) ("A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law."). "[T]he cause standard requires the petitioner to show that some objective factor external to the defense impeded counsel's efforts to raise the claim in state court." McCleskey v. Zant, 499 U.S. 467, 493 (1991) (internal quotations omitted). "Once the petitioner has established cause, he must show 'actual prejudice' resulting from the errors of which he complains." Id. at 494 (quoting United States v. Frady, 456 U.S. 152, 168 (1982)). Where a petitioner has failed to show cause for a procedural default, "federal courts retain the authority to issue the writ of habeas corpus" in certain "extraordinary instances when a constitutional violation . . . has caused the conviction of one innocent of the crime . . . [thus] implicating a fundamental miscarriage of justice." Id. (citing Murray v. Carrier, 477 U.S. 478, 485 (1986)).

Here, Woods failed to challenge on appeal his conviction for third-degree assault under count one of the indictment. (See Resp. App. Br. at 38-46.). Thus, Woods would be barred from raising this claim in state court in a motion to vacate the judgment pursuant to New York Criminal Procedure Law § 440.10 because he has already had the one direct appeal to which he is entitled. (See id. at 37-38.); see also People v. Donovan, 107 A.D.2d 433, 443 (2d Dep't 1985) ("By its very nature, [N.Y. Crim. Proc. § 440.10] cannot be used as a vehicle for an additional appeal or as a substitute for a direct appeal.") (citing People v. Brown, 13 N.Y.2d 201 (1963)). As a result of Woods's procedural default on count one of the indictment, which prevents any further review in state court, his claim may be deemed exhausted. See Castille v. Peoples, 489 U.S. 346, 351 (1989) ("The requisite exhaustion may nonetheless exist, of course, if it is clear that respondent's claims are now procedurally barred under [state] law.").

In addition, Woods has not shown cause for his default or any resulting prejudice such that his claim regarding the weight of the evidence as to count one may nevertheless be reviewed on the merits. See Coleman, 501 U.S. at 745-46; Grey v. Hoke, 933 F.2d 117, 121 (2d Cir. 1991). Furthermore, Woods has not demonstrated, nor has the court found, a fundamental miscarriage of justice. See Aparicio, 269 F.3d at 90. Accordingly, Woods's claim that the evidence of his guilt was legally insufficient to support a conviction for third-degree assault under count one of the indictment is barred from federal habeas review on an adequate and independent state ground. See Coleman, 501 U.S. at 735; Teague v. Lane, 489 U.S. 288, 298-99 (1989).

ii.      Counts Eight and Nine of the Indictment

As discussed above in Sections II.B and III.B.2.i, a federal court, when reviewing a habeas petition from a state prisoner, cannot consider the merits of a constitutional claim "when

16

a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement." Curras v. Pearlman, No. 05-CV-886 (NGG), 2006 WL 1419407, at *2 (E.D.N.Y. May 19, 2006) (quoting Coleman, 501 U.S. at 729-30). "In these cases, the state judgment rests on independent and adequate state grounds." Coleman, 501 U.S. at 729-30 (citing Wainright v. Sykes, 433 U.S. 72, 81 (1977)). When reaching a judgment based upon state procedural grounds, "a state court need not fear reaching the merits of a federal claim in an *alternative* holding. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law." Harris v. Reed, 489 U.S. 255, 264 (1989) (emphasis in original). Thus, "reconsideration of the federal issue on federal habeas [review is barred] as long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision." Id. However, "if the decision of the last state court to which the petitioner presented his federal claims fairly appeared to rest primarily on resolution of those claims, or to be interwoven with those claims, and did not clearly and expressly rely on an independent and adequate state ground, a federal court may address the petition." Beard v. Kindler, 558 U.S. 53, 55 (2009) (quoting Coleman, 501 U.S. at 735).

Whether a claim is procedurally barred is determined by reference to the relevant state law. See Coleman, 501 U.S. at 729-32. "In New York State, a defendant may not raise, for the first time on appeal, arguments concerning the legal sufficiency of the prosecution's evidence that were not raised with specificity in the trial court." King v. Artus, 259 F. App'x 346, 347 (2d Cir. 2008) (citing N.Y. Crim. Proc. Law § 470.05(2)); see also People v. Gray, 86 N.Y.2d 10, 19 (1995) ("[W]here a motion to dismiss for insufficient evidence was made, the preservation requirement compels that the argument be 'specifically directed' at the alleged error.") (internal

quotation marks and citation omitted). "[O]nly those questions of law as to which 'a protest . . . was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same'" are preserved for appellate review. Garcia v. Lewis, 188 F.3d 71, 78 (2d Cir. 1999) (quoting N.Y. Crim. Proc. Law § 470.05). Thus, "the New York Court of Appeals has held that the contemporaneous objection rules embodied in section 470.05 of the Criminal Procedure Law 'require, at the very least, that any matter which a party wishes the appellate court to decide have been brought to the attention of the trial court at a time and in a way that gave the latter the opportunity to remedy the problem and thereby avert reversible error.'" Id. at 81 (quoting People v. Luperon, 85 N.Y.2d 71, 78 (1995)).

Here, Woods challenged the proof of guilt for his conviction of third-degree assault under counts eight and nine of the indictment on his state appeal. (Pet. App. Br. at 38-45.) The People argued that the claim was unpreserved for appellate review because Woods's general motion to dismiss failed to assert that the element of physical injury for the assault charges was not proven at trial. (See Resp. App. Br. at 37-45.) The Appellate Division agreed and held that "[Woods's] contention that the evidence was legally insufficient to support his convictions of assault in the third degree under counts 1, [8], and [9][3] of the indictment is unpreserved for appellate review." People v. Woods, 82 A.D.3d 1277, 1278 (2d Dep't 2011).

The court agrees with the Appellate Division's conclusion. Woods failed to comply with New York's contemporaneous objection rule under New York Criminal Procedural Law § 470.05(2) by not moving to dismiss the charges on the grounds that he later advanced on appeal. See Garcia, 188 F.3d at 81; (see also Pet. App. Br. at 44.) ("[Woods's] [c]ounsel did not move to dismiss these counts on the [grounds that the element of physical injury for the assault

---

[3]     See supra note 1.

18

charges was not proven] when she made a motion to dismiss at the close of the People's case.").
That the Appellate Division also rejected Woods's legal sufficiency claim on the merits is of no
import. See Harris, 489 U.S. at 264; Woods, 82 A.D.3d at 1278. Since the New York State
Supreme Court, Appellate Division expressly relied on a procedural default as an independent
and adequate state ground for its judgment and Woods has not demonstrated cause for the default
and actual prejudice as a result of the alleged violation of federal law, or that failure to consider
the claims will result in a fundamental miscarriage of justice, federal habeas review is barred.
See Coleman, 501 U.S. at 750; Artus, 259 F. App'x at 347 (quoting Green v. Travis, 414 F.3d
288, 294 (2d Cir. 2005)).

### 3. *The Merits of Petitioner's Legal Sufficiency Claim*

Notwithstanding the above, in an abundance of caution, the court has considered
Woods's legal sufficiency claim on the merits. Woods argues that the evidence was legally
insufficient to support convictions for the three counts of Assault in the Third Degree and thus
his conviction violated his right to due process under the Fifth and Fourteenth Amendments.
(Pet. at 4.) Specifically, Woods argues that: (1) he "hit the complainant in the leg with a broom
on one occasion, and on another may have slapped or punched the complainant or threatened to
slap or punch the complainant;" and (2) he was convicted for three third-degree assaults "that
were alleged to have occurred over the period of three months, with no specific date of
occurrences." (Id.) The Appellate Division rejected this claim on the merits. Woods, 82 A.D.3d
at 1277. For the reasons that follow, the court concludes that the Appellate Division's
conclusion was not contrary to, or an unreasonable application of, clearly established federal law.
See 28 U.S.C. § 2254(d).

19

A habeas "petitioner 'bears a very heavy burden' when challenging the legal sufficiency of the evidence in a state criminal conviction." <u>Archer v. Fischer</u>, No. 05-CV-4990 (JFB), 2009 WL 1011591, at *8 (E.D.N.Y. Apr. 13, 2009) (quoting <u>Einaugler v. Supreme Court of the State of N.Y.</u>, 109 F.3d 836, 840 (2d Cir. 1997)), aff'd sub nom., <u>Mannix v. Phillips</u>, 619 F.3d 187 (2d Cir. 2010). A state criminal conviction will be upheld if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Coleman</u>, 132 S. Ct. 2060, 2064, <u>reh'g denied</u>, 133 S. Ct. 74 (2012) (emphasis in original) (quoting <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979)); <u>see also</u> <u>Ponnapula v. Spitzer</u>, 297 F.3d 172, 179 (2d Cir. 2002) ("[W]e review the evidence in the light most favorable to the State and the applicant is entitled to habeas corpus relief only if no rational trier of fact could find proof of guilt beyond a reasonable doubt based on the evidence adduced at trial.").

        i.      Physical Injury Element

When considering the sufficiency of the evidence of a state conviction, "[a] federal court must look to state law to determine the elements of the crime." <u>Ponnapula</u>, 297 F.3d at 179 (quoting <u>Quantararo v. Hanslamaier</u>, 186 F.3d 91, 97 (2d Cir. 1999)). Here, the jury convicted Woods of Assault in the Third Degree. (Pl. Mem. ¶ 2.) Under New York Penal Law, "[a] person is guilty of assault in the third degree when . . . with intent to cause physical injury to another person, [defendant] causes such injury to such person . . . ." N.Y. Penal Law § 120.00(1). Physical injury is defined as "impairment of physical condition or substantial pain." N.Y. Penal Law § 10.00(9). While the question of whether the prosecution proved physical injury is generally a question for the trier of fact, <u>see</u> <u>People v. Guidice</u>, 83 N.Y.2d 630, 636 (1994)

(citing People v. Rojas, 61 N.Y.2d 726, 727 (1984)), the proffered evidence must also meet certain objective criteria, People v. Chiddick, 8 N.Y.3d 445, 447 (2007).

"'[S]ubstantial pain' cannot be defined precisely, but it can be said that it is more than slight or trivial pain." Id. Thus, substantial pain requires "more than a mere technical battery"; "petty slaps, shoves, kicks and the like delivered out of hostility, meanness and similar motives, are not within the definition of the statute." People v. Henderson, 92 N.Y.2d 677, 680, 708 (1999). "[P]ain need not, however, be severe or intense to be substantial." Chiddick, 8 N.Y.3d at 447. "The New York Court of Appeals has outlined several factors relevant to the determination of whether pain is 'substantial' within the meaning of the statute: (1) whether the injury suffered 'would normally be expected to bring with it more than a little pain;' (2) the victim's 'subjective description of what he felt;' (3) whether the victim sought medical treatment; and (4) the defendant's motive in inflicting the harm." Taylor v. Brown, No. 10-CV-5262 (SAS), 2011 WL 797448, at *17 (S.D.N.Y. Mar. 8, 2011), report and recommendation adopted, No. 10-CV-5262 (SAS), 2011 WL 2493528 (S.D.N.Y. June 22, 2011) (quoting Chiddick, 8 N.Y.3d at 447-48). None of these factors, however, is dispositive. See United States v. Graves, 466 F. App'x 56, 57 (2d Cir. 2012).

Given the evidence presented at trial, the jury could reasonably have found Woods guilty of Assault in the Third Degree under counts one, eight, and nine of the indictment. The evidence proffered by the prosecution established that on April 6, 2006, Woods punched Sutton in the nose, hit her repeatedly about the body, and choked her. (Trial Tr. at 165.) As a result, Sutton reported that she suffered a black eye, a swollen cheek, a knot on her forehead, and injured ribs. (Id. at 166.)

During the second incident, which occurred between the dates of April 8, 2006, and May 2, 2006, Woods grabbed a broomstick and repeatedly jabbed at Sutton, ultimately hitting her across the leg with it. (Trial Tr. at 208-210, 409-410.) Sutton testified that as a result of being struck with the broomstick, she sustained bruises to her leg and suffered pain. (Id. at 209.) The bruises to Sutton's leg were documented in a photograph that was entered into evidence for the jury's consideration. (Id. at 279-80, 393-98.)

The evidence further showed that on May 3, 2006, Woods again attacked Sutton—this time punching her in the stomach. (Id. at 207, 263, 412) Sutton testified that as a result of being punched in the stomach, she felt pain, her stomach hurt, and she was unable to attend her classes the following day. (Id. at 207-08.) On May 4, 2006, Woods acknowledged that he had inflicted pain on Sutton by leaving her a voicemail message asking her how her stomach felt. (Id. at 263, 412).

Sutton's testimony about these incidents demonstrates that she was subjected to more than just "petty slaps, shoves, or kicks." Henderson, 92 N.Y.2d 677 at 708. Indeed, in the first incident, Woods struck Sutton with enough force to cause several noticeable and painful injuries. (Trial Tr. at 165-66.) During the second incident, Woods used a broomstick as a weapon, striking Sutton with enough force that she suffered bruises to her leg that were still readily apparent when a photograph of her leg was taken several weeks later. (Id. at 208-210, 279-80, 393-98, 409-410.) During the third incident, Woods struck Sutton in the stomach causing her enough pain to force her to miss school. (Id. at 207-08.) All of these incidents meet three of the four Chiddick criteria: (1) Sutton's injuries would normally be expected to cause more than a little pain; (2) her subjective description indicated that she felt pain; and (3) Woods clearly intended to inflict harm. See Chiddick, 8 N.Y.3d at 447-48). Although Sutton did not seek

22

medical treatment or medication for any of the incidents, "lack of medical treatment is but a factor to consider[,] . . . for pain is subjective and different persons tolerate it differently." Guidice, 83 N.Y.2d at 630; see also Graves, 466 F. App'x 58 ("Although [the victim] did not seek medical attention . . . [t]he district court, as a trier of fact, was entitled to credit [the victim's] account of the pain she experienced."); Nunez v. Conway, 923 F. Supp. 2d 557, 566 (S.D.N.Y. 2013) ("New York courts have found that while [medical] treatment is relevant, [it] is not necessary to establish substantial pain, and seeking medical treatment alone is not sufficient to establish substantial pain."). Accordingly, viewed in a light most favorable to the prosecution, this evidence was sufficient to prove that Sutton suffered impairment of physical condition and substantial pain. See N.Y. Penal Law §§ 10.00(9), 120.00(1).

ii.    Date/Time Period Contained in the Indictment

In charging a defendant for third-degree assault under section 120.00(1), the "indictment must contain [a] statement in each count that the offense charged therein was committed on, or on or about, a designated date, or during a designated period of time." N.Y. Crim. Proc. Law § 200.50. "The paramount purpose of an accusatory instrument is to provide sufficient information regarding the nature of the charge and the conduct which underlies the accusation to allow defendant to prepare or conduct a defense. The instrument also serves to protect an accused from double jeopardy by specifically identifying the alleged crime so that he or she cannot be charged with the crime again in a subsequent prosecution." People v. Sedlock, 8 N.Y.3d 535, 538 (2007) (citations omitted).

"Although an indictment that specifies the date and time when an offense occurred would be preferred, such precision is not always necessary." People v. Morris, 61 N.Y.2d 290, 292

23

(1984). Rather, to fulfill section 200.50, an indictment must provide "a reasonable approximation, under the circumstances of the individual case, of the date or dates involved." Id.

The Court of Appeals has repeatedly declined to fashion a bright-line rule defining the scope of a "reasonable approximation" in an indictment. See Sedlock, 8 N.Y.3d at 539 (finding a seven-month period was too broad a time frame for indictment and conviction but noting that the court has "otherwise been hesitant to adopt a bright-line rule . . . and need not adopt one"); People v. Watt, 81 N.Y.2d 772, 775 (1993) (finding erroneous Appellate Division's conclusion that a five-month period was a per se unreasonable time frame and remanding to lower court for further determination); People v. Keindl, 68 N.Y.2d 410, 419-20 (1986) (finding a nine-month period was too broad a time frame for indictment and conviction); Morris, 61 N.Y.2d at 297 (finding a three-week period was sufficient approximation for indictment and conviction). Rather, when time is not an essential element of the crime, the "determination of whether sufficient specificity to adequately prepare a defense has been provided to a defendant by the [accusatory instrument] and the bill of particulars must be made on an *ad hoc* basis by considering all relevant circumstances." Sedlock, 8 N.Y.3d at 539 (quoting Morris, 61 N.Y.2d at 296).

In light of the evidence presented at trial, the indictment for the third-degree assault that occurred between April 8, 2006, and May 2, 2006, provided a reasonable approximation of the designated period of time such that Woods's subsequent conviction based on this information did not violate his right to due process. See Morris, 61 N.Y.2d at 292. Although a more exact date than the twenty-four day period presented in the indictment and at trial would have been preferable, it is a mere three days longer than the three-week period found permissible in Morris. Id. at 297. Moreover, given the degree of specificity to which Sutton testified, the prosecution

24

sufficiently identified the events surrounding the third-degree assault such that Woods was able to prepare and conduct an adequate defense. See Sedlock, 8 N.Y.3d at 538. Consequently, the court finds that Woods did not suffer a due process violation as a result of the twenty-four day designated period of time provided in the indictment.

\* \* \*

In sum, Woods's challenge to the legal sufficiency of the evidence is partially unexhausted and procedurally barred. In any event, the Appellate Division's ruling that the evidence was legally sufficient to establish that Woods was guilty beyond a reasonable doubt of two counts of assault in the third degree was neither contrary to nor an unreasonable application of clearly established federal law. See 28 U.S.C. § 2252(d)(1). Accordingly, Woods's legal sufficiency claim is denied.

## III.      Ineffective Assistance of Counsel

Woods claims that he received ineffective assistance of counsel in violation of his Sixth Amendment right to a fair trial and his Fourteenth Amendment right to due process of law. (Pet. at 4.) The trial court denied on the merits Woods's pro se motion to vacate his judgment of conviction pursuant to N.Y. Crim. Proc. Law § 440.10(1)(h). People v. Woods, 2012 N.Y. Slip. Op. 30528(U), 2012 WL 781066 (N.Y. Sup. Ct. 2012). Woods sought leave to appeal the decision and the Appellate Division denied Woods's request. (N.Y. App. Div. Decision & Order on Appl. at 1.) For the reasons set forth below, the court finds that the trial court's adjudication of the claim on the merits was not contrary to, or an unreasonable application of, clearly established federal law. See 28 U.S.C. § 2254(d)(1).

Ineffective assistance of counsel claims are governed by the Supreme Court's holding in Strickland v. Washington, 466 U.S. 668 (1984). See Williams v. Taylor, 529 U.S. 362 (2000).

In Strickland, the Court established a two-prong test to determine whether a defendant's Sixth Amendment right to effective assistance of counsel has been violated.

First, under Strickland's "performance" prong, a petitioner must show that trial counsel's representation "fell below an objective standard of reasonableness" measured under "prevailing professional norms." Strickland, 466 U.S. at 688. "Constitutionally effective counsel embraces a 'wide range of professionally competent assistance,' and 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" Greiner v. Wells, 417 F.3d 305, 319 (2d Cir. 2005) (quoting Strickland, 466 U.S. at 690). "Judicial scrutiny of counsel's performance must be highly deferential . . . . [T]he defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Strickland, 466 U.S. at 689 (citations and internal quotation marks omitted). Thus, a court must "not normally fault counsel for foregoing a potentially fruitful course of conduct if that choice also entails a significant potential downside," or if the lawyer otherwise had "a reasonable justification for the decision." Greiner, 417 F.3d at 319 (internal quotation marks omitted).

Second, under Strickland's "prejudice" prong, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding"; rather, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 693-94.

Establishing a claim for ineffective assistance of counsel is a "heavy burden" that, in the context of a § 2254 petition, is "enhanced by the added hurdle posed by the highly deferential review accorded state court adjudications under [AEDPA]." Eze v. Sendkowski, 321 F.3d 110,

26

112 (2d Cir. 2003): see also Harrington, 131 S. Ct. at 788 ("The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.") (internal quotation marks and citation omitted). "[I]t is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly"; instead, the petitioner must show that the state court "applied Strickland to the facts of his case in an objectively unreasonable manner." Bell v. Cone, 535 U.S. 685, 699 (2002). "And, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." Knowles v. Mirzayance, 556 U.S. 111, 122 (2009).

Here, Woods asserts several grounds for his ineffective assistance of counsel claim. Woods argues that defense counsel failed to: (1) introduce evidence that would have allegedly proven that he lived with Sutton, thus negating an element of the first-degree burglary charge; (2) make a motion for a trial order of dismissal at the end of the People's case on the grounds that the evidence was legally insufficient to sustain a charge of first-degree burglary; and (3) object or request that the jury's verdict be dismissed on the grounds of repugnancy at the end of the trial. (Pet. at 4.) For the reasons that follow, the court finds that none of these assertions provides a basis for habeas relief.

### 1. *Failure to Introduce Evidence and Call Witnesses*

Woods argues that his defense counsel, Danielle Eaddy, was ineffective because counsel failed to introduce evidence and question witnesses that would have allegedly proven that Woods lived with Sutton. (Pet. at 4.) Specifically, Woods asserts that the police reports established that Woods was a "co-habitant of the dwelling he was accused . . . of burglarizing," (Def. Mot. to Vacate J. at 15), and that defense counsel "failed to call as a witness the arresting officer and

author of the transcribed police reports describing the complaints." (Pet. at 4.) Thus, according to Woods, because Police Officer Latanya Dixon—the officer who transcribed the police report—and Detective Mirailh—the detective assigned to investigate the case—would have testified that Woods lived with Sutton, this would have negated one of the elements of the first-degree burglary[4] charge. The court disagrees.

"[T]he tactical decision of whether to call specific witnesses—even ones that might offer exculpatory evidence—is ordinarily not viewed as a lapse in professional representation." United States v. Schmidt, 105 F.3d 82, 90 (2d Cir. 1997); see also United States v. Fakih, No. 05-CR-713 (SHS), 2008 WL 4833019, at *3 (S.D.N.Y. Nov. 1, 2008) ("[T]he decision whether to call a specific witness is a strategic decision well within the ken of the trial counsel."). "Courts applying Strickland are especially deferential to defense attorneys' decisions concerning which witnesses to put before the jury." Bennett v. Fischer, No. 02-CV-5232 (JBW), 2006 WL 1084772, at *17 (E.D.N.Y. Apr. 25, 2006), aff'd, 246 F. App'x 761 (2d Cir. 2007) (quoting Greiner v. Wells, 417 F.3d 305, 319 (2d Cir. 2005); see also United States v. Luciano, 158 F.3d 655, 660 (2d Cir. 1998) ("The decision not to call a particular witness is typically a question of trial strategy that appellate courts are ill-suited to second-guess."); United States v. Nersesian, 824 F.2d 1294, 1321 (2d Cir. 1987) ("Decisions whether to engage in cross-examination, and if so to what extent and in what manner, are . . . strategic in nature" and will not support an ineffective assistance claim). "Such a strategic decision is not a basis on which to grant a [habeas] petition." Fakih, 2008 WL 4833019, at *3.

---

[4]     Under New York Penal Law, "[a] person is guilty of burglary in the first degree when he knowingly enters or remains *unlawfully in a dwelling* with intent to commit a crime therein, and when, in effecting entry or while in the dwelling or in immediate flight therefrom, he or another participant in the crime . . . [d]isplays what appears to be a pistol, revolver, rifle, shotgun, machine gun or other firearm." N.Y. Penal Law § 140.30 (emphasis added).

Here, Woods's claim that his trial counsel's performance was ineffective is meritless. The decision not to call Officer Dixon or Detective Mirailh as witnesses was well within the discretion of defense counsel and did not constitute ineffective assistance of counsel. See Nersesian, 824 F.2d at 1321 ("The decision whether to call any witnesses on behalf of the [defendant] will not constitute a basis for an ineffective assistance claim.").

Moreover, defense counsel was not ineffective for declining to call Officer Dixon or Detective Mirailh at trial to testify to Sutton's statements that Woods had lived with her for a period of time because this information was already before the jury. Sutton testified at trial that, while Woods often spent the night at her house, he did not live with her and did not have a set of keys. (Trial Tr. 253, 366.) On cross-examination, defense counsel repeatedly attempted to establish that Woods was a co-habitant of Sutton's dwelling and challenged Sutton when she maintained that Woods never lived with her:

> Q [Defense Counsel]: And my client [Woods] began to live with you around January, February, of '06, isn't that correct?
>
> A [Chandra Sutton]: Your client never lived with me.
>
> Q: Do you remember speaking to a Detective Mirahl, the case detective on this case?
>
> A: Yes.
>
> Q: Do you remember telling him that, Mirahl, do you remember telling him that my client had lived with you in your parents' house for the past four months, yes or no?
>
> A: Yes.
>
> . . . .
>
> Q: I am sorry, so you did tell the case detective that the defendant had been living with you for the past four months; is that correct?
>
> A: Yeah, yes.

. . . .

Q: And when [Sutton's previous boyfriend] moved out, my client came to live with you?

A: No, your client didn't come to live with me. He came to spend the night. At nights, he would come at one o'clock, and I would not send him home. And it just became everyday [sic] that he would come. He did not live with me.

. . . .

Q: And you gave him the keys to your house?

A: I let him hold the keys to my house.

Q: And how often would you let him hold your keys to your house?

A: Whenever that, before I started working, I would only have a class for an hour and 15 minutes and he had to go take care of business. And we would meet up, meet me back at my house. So it was like on a few occasions I had let him hold the keys, my keys to my house.

Q: And isn't it a fact that he continued to hold keys to your house up until May 7th of 2007, yes or no?

A: No.

Q: Isn't it a fact that he gave back your keys on the morning of May 7th of 2007?

. . . .

A: No

Q: Isn't it a fact that he gave you back your keys on the morning of May 7th of 2007 after he told you that he wanted to go back to his wife?

A: No, that is a lie.

(Trial Tr. 366-69.) Although defense counsel was unable to extract a concession from Sutton

that Woods did in fact live with her, counsel was able to elicit from Sutton that she had *told*

Detective Mirailh that Woods had lived with her.[5] (Id. at 366.) Thus, there was no need for defense counsel to call Detective Mirailh or Officer Dixon to obtain the same evidence. See Greinei, 417 F.3d at 319; Nersesian, 824 F.2d at 1321. Defense counsel was well within the bounds of her tactical and strategic discretion in declining to call Detective Mirailh or Officer Dixon to testify that Sutton had indicated that she had lived with Woods. See Nersesian, 824 F.2d at 1321.

Finally, Woods's own grand jury testimony belied the claim that he ever lived with Sutton. Woods specifically testified in the grand jury that he did *not* live with Sutton. Rather, Woods testified that he lived in Virginia with his wife and that he only came to visit Sutton on the weekends. (Grand Jury Tr. (Dkt. 10-4) at 13.) Woods further testified that he did not have keys to Sutton's apartment and would have to wait for her in a nearby park to be let inside her house when he came to visit. (Id. at 24-25.) Accordingly, any information contained in the police report indicating that Woods lived with Sutton and thus did not unlawfully enter her home would have been contradicted by Woods' own grand jury testimony.

### 2. *Failure to Make a Motion that the Evidence was Legally Insufficient*

Woods also argues that his defense counsel was ineffective because counsel failed to make a motion for a trial order of dismissal at the end of the People's case on the grounds that the evidence was legally insufficient to sustain a charge of Burglary in the First Degree. (Pet. at 4.) Contrary to Woods's assertion, defense counsel *did* make a motion to dismiss the first-degree burglary count at the conclusion of the People's case. (Trial Tr. at 706-07.) In fact, the record could not be clearer:

---

[5]     Respondent's Opposition Brief notes that because Sutton admitted making a prior statement that Woods had lived in Sutton's home for a period of time, Detective Mirailh's testimony regarding Sutton's statement would have been inadmissible hearsay. (Res. Opp'n at 15.) The court notes, but declines to evaluate, this argument.

MS. KOSSOV: The People rest.

. . . .

THE COURT: Miss Eaddy. Do you wish to . . . make your motion?

. . . .

MS. EADDY: Your honor, *I'm going to ask that the People's case be dismissed* in its entirety, particularly *with respect to . . . the burglary counts . . . .* The case law is clear that if a person is given permission, consent to enter into a location, regardless of what they do when they're in that location, that they're not guilty of burglary : . . . So, *I'm going to ask that . . . the burglary counts be dismissed.*

THE COURT: You're not maintaining, Miss Eaddy, that [Woods] was invited in on April 8th, when he's standing there soaking wet with a gun pointing at the complaining witness when she opens the door? You're not maintaining that?

MS. EADDY: Your honor, what I am maintaining is that at the time that [Woods] allegedly pointed the gun at her, he was living there and he was a guest of her house. It's a different question as to whether or not -- Of course, no one invites someone to point a gun at them. I mean, I've tried countless domestic violence cases inside of a house where a defendant kills someone or they assault someone. They don't charge burglary, because it's a separate crime. It's meant to take care of someone who is not an invitee committing a crime.

. . . .

THE COURT: I hear you. I'm going to deny your motion[] at this time.

(Trial Tr. at 707-13.) (emphasis added) Accordingly, because defense counsel clearly made a motion for a trial order of dismissal at the end of the People's case on the grounds that the evidence was legally insufficient to sustain a charge of first-degree burglary, Woods's claim that his defense counsel failed to do so is entirely without merit.

### 3. *Failure to Object or Request that the Jury's Verdict be Dismissed*

Woods further claims that his defense counsel was ineffective because counsel failed to object to or request that the jury's verdict be dismissed on the grounds of repugnancy at the end of the trial. (Pet. at 4.) Specifically, Woods argues that the jury's verdict was repugnant with respect to the charge of Burglary in the First Degree in light of the fact that the jury acquitted

32

him of Criminal Possession of a Weapon in the Second Degree, Criminal Possession of a Weapon in the Third Degree, and Criminal Possession of a Weapon in the Fourth Degree. (Id.) For the reasons that follow, the court disagrees.

As discussed above in Section III.C, under the first prong of the two-part Strickland test, the petitioner must establish that his attorney's performance was so deficient that it "fell below an objective standard of reasonableness." Strickland v. Washington, 466 U.S. 668, 688 (1984). The reviewing court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. at 689 (internal quotation marks omitted). A sound "strategic decision is a 'conscious, reasonably informed decision made by an attorney with an eye to benefitting his client.'" Cox v. Donnelly, 387 F.3d 193, 198 (2d Cir. 2004) (quoting Pavel v. Hollins, 261 F.3d 210, 216 (2d. Cir. 2001)).

Here, after the verdict was announced, defense counsel indicated to the trial court that Woods would be making a motion to set aside the verdict with respect to the first-degree burglary conviction in light of the fact that Woods was acquitted of all the weapons counts in the indictment. (Trial Tr. at 994.) Specifically, defense counsel asked for a lengthy adjournment so that she could properly research the issue before bringing the motion. (Id.) However, counsel never filed that motion and, instead, the court proceeded to sentencing. (See id. at 994); (Proceedings (Dkt. 10-3) at 1-14.); (Sentence (Dkt. 10-3) at 1-20.)

Defense counsel's decision to not file the motion to set aside the verdict was a sound trial strategy for obvious reasons: it would have been a frivolous motion clearly not based on the elements of the respective crimes. A verdict acquitting a defendant of Criminal Possession of a

33

Weapon in the Second Degree, Criminal Possession of a Weapon in the Third Degree, or Criminal Possession of a Weapon in the Fourth Degree does not preclude a finding of guilt as to Burglary in the First Degree since the material elements of the burglary charge are not identical, and therefore, not inconsistent with the weapon charges.

Burglary in the First Degree, as submitted to the jury, only required proof that Woods displayed "what *appear[ed]* to be a pistol, revolver, rifle, shotgun, machine gun or other firearm." N.Y. Penal Law § 140.30 (emphasis added). Criminal Possession of a Weapon in the Second Degree, Criminal Possession of a Weapon in the Third Degree, Criminal Possession of a Weapon in the Fourth Degree required Woods to *possess a firearm.* See N.Y. Crim. Pro. Law §§ 265.03, 265.02, and 265.01. While the weapon charges required Woods to actually possess a firearm, the burglary charge only required that Woods displayed what appeared to be a firearm. Therefore, the elements of these crimes are not identical to each other and Woods's acquittal of the weapons charges did not negate an essential element of the first-degree burglary charge. Accordingly, defense counsel's decision not to file a motion to set aside the verdict was a conscious, reasonably informed trial strategy and, thus, not ineffective assistance of counsel. See Cox, 387 F.3d at 198.

In sum, Woods was provided effective assistance of counsel and the trial court's rejection of Woods's claim on the merits was not contrary to, or an unreasonable application of, clearly established federal law. See 28 U.S.C. § 2254(d).

## IV.    CONCLUSION

For the reasons set forth above, Woods has failed to meet his burden of establishing that the state court's denial of his claims for relief "was contrary to, or involved an unreasonable application of, clearly established federal law." 28 U.S.C. § 2254(d). Accordingly, his Petition

34

for Writ of Habeas Corpus is DENIED. No certificate of appealability shall issue because there has been no "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c). The Clerk of Court is respectfully directed to enter judgment and to close this case.

      SO ORDERED.

s/Nicholas G. Garaufis

Dated: Brooklyn, New York
      November 18 , 2013

NICHOLAS G. GARAUFIS
United States District Judge